I.  **FACTUAL BACKGROUND**

Plaintiff is a distributor of sports and entertainment programming and held the commercial exhibition rights to broadcast four pay-per-view fights (collectively, the "Events"):

> *Ultimate Fighting Championship®* 252: Miocic vs. Cormier 3 on August 15, 2020 ("UFC 252");
>
> *Ultimate Fighting Championship®* 253: Adesanya vs. Costa on September 26, 2020 ("UFC 253");
>
> *Ultimate Fighting Championship®* 254: Khabib vs. Gaethje on October 24, 2020 ("UFC 254");
>
> *Gervonta Davis vs. Leo Santa Cruz* on October 31, 2020 ("*Davis vs. Santa Cruz*")

[Compl. ¶ 1; *see also* 2019-20 UFC Commercial Licensing Agreement; *Davis vs. Santa Cruz* Commercial Licensing Agreement.] Pursuant to its distribution rights, Plaintiff entered into sublicensing agreements with various commercial establishments who, in turn, were permitted to broadcast the Events. [Compl. ¶¶ 9–10.] The transmission of each Event was encrypted and available only to customers who paid Plaintiff a sublicense fee. [Pl.'s Br. at 2–3.]

Plaintiff alleges that on the nights of the Events, Defendant Somers Point Cigars, Inc. *d/b/a* Somers Point Cigar Lounge ("Somers Point Cigar Lounge"), under the supervision of Defendant Steven Ortiz—the owner of Somers Point Cigar Lounge—unlawfully intercepted and decrypted the Events and exhibited them to Somers Point Cigar Lounge patrons without paying the required license fees to

Plaintiff. [Compl. ¶¶ 10–14; Pl.'s Br. at 2–4.] In support of its allegations, Plaintiff relies on an affidavit submitted by one of its auditors. [*See* Affidavit of Kevin Adrian ("Adrian Aff.").] Plaintiff regularly hires auditors and law enforcement personnel to "detect and identify signal pirates" and determine whether commercial establishments are exhibiting any of its programming without proper authorization. [*See* Declaration of Joseph P. Hand, III ¶ 6 ("Hand Decl."); Pl.'s Br. at 4.] On August 15, 2020, one of Plaintiff's auditors, Kevin Adrian, entered Somers Point Cigar Lounge and observed UFC 252 being broadcast to approximately six patrons on two different televisions. [*See* Adrian Aff. at 1.] Mr. Adrian estimated that Somers Point Cigar Lounge had an approximate capacity of twenty-five people. [*Id.*]

Mr. Adrian did not personally observe Defendants exhibiting UFC 253, UFC 254 or *Davis vs. Santa Cruz*. However, Defendants advertised on Somers Point Cigar Lounge's Facebook page that it would be showing each of these fights. [*See* Declaration of Ryan R. Janis, Esq. in Support of Plaintiff's Motion for Default Judgment ("Janis Decl."), Ex. A; Pl.'s Br. at 6.][1]

---

[1] Defendants also advertised on the Somers Point Cigar Lounge's Facebook page that they would be showing UFC 252, which Mr. Adrian did personally observe. [Janis Decl., Ex. A at 1.] Additionally, although Mr. Adrian did not personally observe Defendants exhibiting UFC 254 at Somers Point Cigar Lounge, the relevant Facebook advertisement for that event clearly shows a television at Somers Point Cigar Lounge exhibiting a preliminary card fight from UFC 254 consistent with Defendants' Facebook advertisement. [*See* Janis Decl., Ex. A at 3–4; *compare also id*. at 3, *with* Adrian Aff. at 3–5.]

3

## II.     PROCEDURAL BACKGROUND

Plaintiff filed its complaint against Defendants on August 9, 2022, alleging that Defendants knowingly and willfully violated 47 U.S.C. §§ 553 and 605. [Docket No. 1.] Plaintiff served a copy of the Summons and Complaint on Mr. Ortiz who serves as the registered agent for Somers Point Cigar Lounge. [Docket No. 4].[2] Defendants did not answer or otherwise respond to the Complaint.

Plaintiff accordingly submitted a Request for Entry of Default on April 5, 2023, which the Clerk of Court entered the next day. [*See* Docket No. 6.] Plaintiff now moves for a final default judgment against both Defendants and elects for damages under Section 605 rather than Section 553. [*See* Docket No. 7; Pl.'s Br. at 5.]

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of a default judgment. Once default has been entered, and a party has moved for default judgment, the Court, prior to entering default judgment, must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Joe Hand Promotions, Inc. v. Batra*, 2017 WL 838798, at *2 (D.N.J. March

---

[2] Plaintiff also served Somers Point Cigar Lounge at its business address, delivering a copy of the Summons and Complaint to the Lounge's manager, who was apparently authorized to accept service for Somers Point Cigar Lounge. [Docket No. 5].

4

2, 2017). Additionally, the following three factors determine whether default judgment should be granted: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

IV.   **ANALYSIS**

    A.   **Jurisdiction and Service of Process**

The Court must ascertain its jurisdiction both over the subject matter and the parties before entering default judgment against a party that has not filed responsive pleadings. *HICA Educ. Loan Corp. v. Surikov*, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015). Here, the Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under 47 U.S.C. §§ 553 and 605, both of which provide private rights of action to an aggrieved party. *See* 47 U.S.C. §§ 553(c), 605(e). Additionally, the Court has personal jurisdiction over Defendants because both were personally served in New Jersey. *See* FED. R. CIV. P. 4(e), (h)(1); N.J. CT. R. 4:4-4(a) ("The primary method of obtaining *in personam* jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this."). Mr. Ortiz was personally served at his home pursuant to N.J. Ct. R. 4:4-4(a)(1), [*see* Docket No. 4], and Somers Point Cigar Lounge was properly served pursuant to N.J. Ct. R. 4:4-4(a)(6) through Mr. Ortiz because he is the

registered agent for Somers Point Cigar Inc. [*See* Janis Decl. Exs. B–D; *see also* Docket No. 4.]

### B. Sufficiency of Plaintiff's Causes of Action

The Court must determine whether the Complaint states a proper cause of action, accepting all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535–36. To state a claim under 47 U.S.C. §§ 553 or 605, a plaintiff must allege that defendants intercepted a broadcast without authorization; and showed the broadcast to others. *See J&J Sports Prods., Inc. v. Edrington*, 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012). If a plaintiff demonstrates that "the interception of the broadcast was willful and for commercial advantage or private gain," a court may award enhanced damages. *Id.*; 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff alleges that it had the exclusive right to distribute the Events, that it entered into sublicense agreements with various establishments in New Jersey permitting those establishments to broadcast the Events to their patrons, and that it did not enter into such a sublicense agreement with Defendants. [Compl. ¶¶ 8–9.] This is sufficient to establish that Defendants were not authorized to exhibit any of the Events. *See Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *3 (D.N.J. March 13, 2013).

Plaintiff established that the Events were exhibited in the Somers Point Cigar Lounge through Mr. Adrian's personal observations, [*see* Adrian Aff.], as well as

6

evidence that Defendants advertised exhibition of UFC 253, UFC 254, and *Davis vs. Leo Santa Cruz* on Somers Point Cigar Lounge's Facebook page, [Janis Decl., Ex. A.] Because the Court must accept all allegations in the Complaint as true and draw all reasonable inferences in favor of Plaintiff, it concludes that the Defendants intercepted and exhibited all the Events. *See Joe Hand Promotions, Inc. v. Benitez*, 2020 WL 5519200, at *5 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020) (finding that Plaintiff could state a cause of action under Section 605 where defendant-establishment advertised exhibition of three events for which it did not have authorization, and where Plaintiff's investigator only personally observed defendant-establishment broadcasting one such event). Accordingly, Plaintiff has stated a proper cause of action against Defendants.[3]

Finally, because Plaintiff has sufficiently alleged that Defendants did not obtain a sublicense to exhibit any of the Events, the Court finds that Defendants could not have innocently accessed broadcasts of the Events. [Compl. ¶¶ 11–13; *see*

---

[3] As for Mr. Ortiz, the Court finds that he may be found individually liable under Section 605 as Plaintiff has sufficiently alleged that he had (1) "the right and ability to supervise the violative activity"; and (2) "a direct financial interest in the violation[.]" *J&J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (citations omitted); *see also J&J Sports Prods., Inc. v. Old Bailey Corp.*, 2019 WL 4267856, at *2 (D.N.J. Sept. 9, 2019) (finding individual liability where individual defendant was an officer and license holder of the commercial establishment). Specifically, the Complaint alleges and the evidence submitted demonstrates that Mr. Ortiz is an "an officer, director, shareholder, member and/or principal" of Somers Point Cigar Lounge. [Compl. ¶ 3; *see also* Janis Decl., Ex. C (Facebook page of Stephen Ortiz identifying himself as the owner of Somers Point Cigar Lounge).]

*also Waldron*, 2013 WL 1007398, at *3.] Further, because Defendants displayed the Events at their place of business, the Court may infer that Defendants' conduct was "for the purposes of direct or indirect commercial advantage or indirect pecuniary gain," rather than for enjoyment by private parties at home. *See* 47 U.S.C. § 605(c)(3)(C)(ii). The Court, therefore, may award enhanced damages under Section 605. *Waldron*, 2013 WL 1007398, at *7–8.

### C. The Default Judgment Factors

As stated *supra*, before entering default judgment the Court must make explicit factual findings regarding (1) the prejudice to plaintiff should default be denied; (2) whether defendants have a meritorious defense; and (3) the culpability of Defendants. *Chamberlain*, 210 F.3d at 164. Here, the *Chamberlain* factors support entering default judgment. First, this lawsuit, and the entering of default judgment, is Plaintiff's only means for seeking relief against Defendants for the alleged harm. As a result, Plaintiff will be prejudiced in the absence of a default judgment. Next, nothing in the papers before the Court indicates that Defendants have any available defense. Moreover, because Defendants have not responded, they have necessarily failed to present anything that could provide a basis for a meritorious defense. *See Batra*, 2017 WL 838798, at *3. Finally, the Court is permitted to infer Defendants' culpability based on their failure to answer without any explanation and will do so in this case. *See id*. Therefore, the Court finds default judgment to be warranted.

### D. Damages

Though the Court may take a complaint's factual allegations as true for purposes of granting a default judgment, a plaintiff must still prove damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The relevant provision of Section 605 allows for an award of statutory damages between $1,000 and $10,000 per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). If a court deems enhanced damages warranted, the award may be increased by up to $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii).

#### 1. *Statutory Compensatory Damages*

Plaintiff requests statutory compensatory damages in the amount of $3,158 under Section 605(e)(3)(C)(i)(II). [Pl.'s Br. at 6.] That calculation is based on the fees a commercial establishment similar in size to Somers Point Cigar Lounge would have had to pay in order to legally exhibit each of Events at their establishment. For each UFC fight, Defendants would have had to pay $866 and for the *Davis vs. Santa Cruz* fight, Defendants would have had to pay $560. [*See* 2020 UFC Rate Card; *Davis vs. Santa Cruz* Rate Card.] That calculation of statutory damages is consistent with the decisions of other courts in this District. *See G&G Closed Cir. Events, LLC v. Don Tequila Bar & Grill L.L.C.*, 2020 WL 133033, at *3 (D.N.J. Jan. 13, 2020) (awarding statutory damages under Section 605 based on the cost of the licensing fee); *J&J Sports Prods., Inc. v. Gallegos*, 2008 WL 3193157, at *4 (D.N.J. Aug. 5, 2008) (awarding $1,500 in statutory damages based on an estimate of what it would have

cost defendant to legally exhibit the program). Accordingly, the Court will award Plaintiff its requested $3,158 in statutory damages.

### 2. *Statutory Enhanced Damages*

Having found that Defendants' interception and exhibition of the Events was willful and for the purposes of commercial advantage, as explained above, the Court will also award enhanced damages under Section 605. Plaintiff requests enhanced damages in the amount of $12,632—four times the amount of its requested statutory damages. [Pl.'s Br. at 11.]

In determining the appropriate award of enhanced damages, courts consider five factors:

> (1) Whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast.

*Batra*, 2017 WL 838798, at *4. As to the first factor, Plaintiff alleges that Defendants intercepted and exhibited a total of four unauthorized broadcasts, but only over a three-month period, and there are no allegations or evidence that Defendants intercepted any unauthorized broadcasts prior to August 2020. [Compl. ¶ 1.] As to the second factor, Plaintiff has not made allegations or submitted any evidence to suggest that Defendants made any profits, let alone substantial profits specifically attributable to the exhibition of the Events—Plaintiff's own investigator only observed six patrons at the Lounge on the night of UFC 252 and did not personally

observe any patrons on any other night. [Adrian Aff. at 1.] As to the third factor, and as stated above, Plaintiff's actual loss appears to be the cost of the sublicense fees, which under the circumstances would be $3,158. As to the fourth factor, Plaintiff alleges and submitted evidence demonstrating that each of the Events was advertised at least once on the Somers Point Cigar Lounge Facebook page. [Janis Decl., Ex. A.] As to the final factor, Plaintiff's investigator reported that Defendants charged no cover fee and that there was no premium charged for food or drink. [Adrian Aff. at 1.]

In similar circumstances, courts have awarded enhanced damages twice the amount of any statutory damages. *Joe Hand Promotions, Inc. v. Forupk LLC*, 2022 WL 17486156, at *4 (D.N.J. Dec. 7, 2022) (awarding enhanced damages twice the amount of the statutory damages where defendant advertised its intent to broadcast); *Old Bailey Corp.*, 2019 WL 426756, at *4 (same); *Batra*, 2017 WL 838798, at *3–4 (awarding approximately twice the amount of statutory damages even when defendant charged a cover, required a one drink minimum, and required a hookah purchase); *Waldron*, 2013 WL 1007398, at *8 (awarding double the amount of statutory damages); *Benitez*, 2020 WL 5519200, at *7 (awarding enhanced damages twice the amount of statutory damages where three of five factors were met, including multiple interceptions and advertisements). The Court finds that approach persuasive and thus, awards $6,316 in statutory damages bringing the calculation of statutory and enhanced damages to a total penalty of $9,474. The Court finds this amount sufficient to deter future violations by defendants.

### 3. *Attorneys' Fees and Costs*

Section 605 directs the Court to award attorneys' fees and costs to an aggrieved party who prevails on its claim. 47 U.S.C. § 605(e)(3)(B)(iii) (providing for recovery of "full costs, including ... reasonable attorneys' fees"). Plaintiff has requested that the Court award $532 in service costs and for leave to file an application for attorneys' fees. [Janis Decl. ¶¶ 9–10.] The Court will award Plaintiff its $532 in requested costs [*see* Docket No. 1 (stating that Plaintiff paid $402 filing fee to initiate this action); Janis Decl., Ex. D (service of process invoice for $130)], and grant Plaintiff leave to file an application for attorneys' fees pursuant to Local Civil Rules 54.1 and 54.2 within thirty days after entry of this Opinion if it chooses to do so.

## V. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Default Judgment and awards damages in an amount totaling $10,006 inclusive of statutory damages, enhanced damages, and costs. An appropriate Order will follow.

**December 15, 2023**　　　　　　　　　　s/ Renée Marie Bumb
Date　　　　　　　　　　　　　　　　　　RENÉE MARIE BUMB
　　　　　　　　　　　　　　　　　　　　Chief United States District Judge